UNITED STATES of America, Plaintiff,

v.

Phillip Adrian ROBERTSON, Defendant.

Crim. No. 97–147(3).

United States District Court,
D. Minnesota.

Nov. 18, 1998.

Jerry Strauss, Golden Valley, MN, for defendant Phillip Adrian Robertson.

Kenneth W. Saffold, Assistant United States Attorney, for U.S.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

The Defendant was charged in an eleven count Superseding Indictment dated July 1, 1997. Count One charged Defendant with conspiracy to interfere with Interstate Commerce by Threats of Violence in violation of 18 U.S.C. §§ 371 and 1951; Use of a Firearm During and in Connection with a Crime of Violence in violation of 18 U.S.C. §§ 924(c) and 2. Counts Two, Four, Six, Eight and Ten charged Defendant with Aiding and Abetting Robbery Affecting Commerce in violation of 18 U.S.C. §§ 1951 and 2. Counts Three, Five, Seven, Nine and Eleven charged the Defendant with Aiding and Abetting Use of a Firearm in a Crime of Violence in violation of 18 U.S.C. § 924(c)(1) and (2). The Defendant pleaded not guilty to all counts, and the matter was tried before a jury. The jury returned a verdict of guilty on all counts against the Defendant.

The matter is now before the Court for sentencing. For the reasons discussed below, the Court, on its own motion, vacates the jury's verdict as to Defendant Robertson and orders a new trial.

## BACKGROUND

Defendant, along with five co-defendants, was charged with committing a number of violent armed robberies of Asian-owned jewelry stores. At trial, the Government presented evidence which established that Defendant Narin Vong was the leader of the conspiracy, the object of which was to rob Asian-owned jewelry stores for particular items. Vong would target a jewelry store, and provide information as to the store to codefendant Khanesavanh Nhalay. Nhalay would then sketch the interior of the store, familiarize his coconspirators with the store's alarm system, and instruct his coconspirators as to what items to steal and inform them of the contingency and escape plans. After the robberies, Vong would pay Nhalay for the merchandise, and Nhalay would then pay those individuals that participated in the robbery. Those individuals identified as participating in the robberies are co-defendants Bounsong Thatsanaphone, David Edward Martin, Jaimie Gonzalez, Phillip Adrian Robertson, and at least two juveniles.

Defendant Robertson's role in the robberies included assisting in the planning of the robberies, stealing automobiles for use during the course of the robberies, providing firearms to the other participants and acting as a lookout.

Defendant Thatsanaphone role in the robberies was to actually carry them out. He, along with a juvenile, entered the jewelry stores brandishing semiautomatic weapons, and carried out the robberies under a threat

of great violence. For example, during the robbery of the Bockstruck's Jewelry Store in St. Paul, Thatsanaphone brandished a semiautomatic weapon and threatened to shoot the employees if they didn't lie on the floor. He continued to threaten the employees as he emptied the display case.

Defendant Martin was recruited to conduct to surveillance, provide firearms to his coconspirators and to drive the switch vehicles.

On October 15, 1996, Vong conspired with Nhalay, Robertson and Gonzalez to rob the person of Duke Henry Cheng. Mr. Cheng was a jewelry merchant and was familiar with Vong, as Vong also owned and operated a jewelry store. A plan was developed to rob Mr. Cheng as he was visiting another jewelry store. Vong believed that Mr. Cheng would have a large amount of merchandise and cash on his person. Nhalay, Robertson and Gonzalez followed Mr. Cheng and ambushed him as he was getting out of his car. Mr. Cheng was able to escape, but not without receiving a gun shot wound which caused serious bodily injury.

After the Indictment was handed down, Defendant Robertson was interviewed by FBI Agents. He was orally given his *Miranda* rights, and the Defendant was also asked to read them. Defendant signed the "Waiver of Rights" form and was thereafter interviewed for approximately one and a half hours concerning the robberies and his role in them.

Three of the Defendant's co-defendants, Nhalay, Thatsanaphone and Martin, entered into Plea Agreements with the Government. The three defendants each agreed to enter pleas of guilty to a number of counts charged in the indictment and to cooperate with the Government. In exchange, the Government agreed to move for a downward departure pursuant to Section 5K1.1 of the Sentencing Guidelines and pursuant to 18 U.S.C. § 3553(e) to allow the Court to impose sentence without regard to the applicable statutory minimum sentence. This Court accepted the Plea Agreements entered into between the Government and Nhalay,

Thatsanaphone and Martin, and granted the Government's motions for downward departures. Accordingly, this Court Nhalay to a term of imprisonment of 90 months imprisonment, and sentenced both Thatsanaphone and Martin to 60 months imprisonment.

The charges against Vong and Robertson were tried jointly before a jury in September 1997. Prior to the commencement of trial, the Government noted for the record that Defendant Robertson was facing a sentence over 85 years if convicted of all counts. The Government further noted that Robertson essentially confessed shortly after his arrest, and that the Government attempted to work with him in order to reach a plea agreement to allow Robertson to receive a sentence commensurate with his co-defendants. (Transcript p. 11–12). In response to the prosecutor's comments, counsel for Robertson, Mr. Jerry Strauss, conceded that the Government had in fact offered his client a deal similar to that offered to the co-defendants. He then went on to state:

> Well, I want the Eighth Circuit to know, and maybe even the United States Supreme Court to know, that any deal of a client of mine that includes working for the Government is not representing the people. My client has instructed me specifically to turn down all plea agreements. ***
>
> So, with respect to my client turning down a plea agreement, I quite frankly am philosophically opposed to working for the Government, and when I had practiced before your Honor even in the times when I worked as a young lawyer under your tutelage, Your Honor, my goal was to represent people and not to represent the Government.

(Transcript p, 16–17).[1]

Counsel's comments regarding cooperation agreements is cause for concern as it appears that Robertson was never counseled by Mr. Strauss to accept any agreement offered by the Government, the result of which would take approximately 80 years off of his poten-

---

1. While Mr. Strauss expressed strong views against cooperation agreements, at no time did he file any motions to that effect.

tial sentence. Unfortunately, matters did not get any better for Robertson during trial.

Numerous witnesses, including Nhalay, Thatsanaphone and Martin, took the witness stand and clearly implicated Robertson in the crimes charged. The jury was also presented with the evidence concerning Robertson's confession. To make matters worse, Robertson's counsel was admonished three times by the Court, and found in contempt at one time, for making totally inappropriate comments to witnesses.

The basis for the first admonishment took place when Mr. Strauss was cross-examining Heidi Hammond.

> MR. STRAUSS: Did he ever know you were a working girl?
>
> MS. HAMMOND: Not before yesterday.
>
> MR. STRAUSS: Let's get this straight. You're a whore, right? That's what an escort is right?
>
> MS. HAMMOND: Right.
>
> MR. STRAUSS: You're a whore, right?
>
> MS. HAMMOND: Yeah.
>
> MR. STRAUSS: You get paid for screwing other people, right?

(Trial Transcript p. 192).

Shortly thereafter, Mr. Strauss was cross-examining another Government witness, Bounthanh Keomany, when the following exchange occurred:

> MR. STRAUSS: Now this rap sheet right here says you burned a dog. Do you remember doing that?
>
> MR. KEOMANY: No.
>
> MR. STRAUSS: Do you eat dog?
>
> THE COURT: Mr. Strauss, I just can't believe that. Approach the Bench.

(Trial Tr. 235).

In response to these exchanges, this Court was compelled to issue the following Order dated September 25, 1997:

> IT IS HEREBY ORDERED that counsel WILL NOT make sexist or racist comments, including referring to witnesses as "whore", in this courtroom, during this trial at any time. Counsel will be sanctioned if such comments are made in the future. Counsel is instructed to follow the rules of civility towards all participants in this case, including opposing counsel, the defendants, witnesses and court personnel.

Later in the trial, the Government called an individual by the name of Nikhom Syharaj. It was brought out in testimony that Mr. Syharaj had the street name of "Sunshine." When cross-examining this witness, Mr. Strauss addressed the witness as "Mr. Sunshine" rather than by using his proper name. (Trial Tr. 528) The Court held Mr. Strauss in contempt of this Court's September 25, 1997 Order, and fined him $200.

On October 10, 1997, the jury convicted Defendant Vong as to Counts One, Eight, Nine and Ten of the Superseding Indictment. Vong has since been sentenced to a term of imprisonment for 147 months. The same jury convicted Robertson as to all counts— five of which were gun charges which carry automatic consecutive sentences.

A Presentence Investigation Report (PSI) was prepared by the Probation Office. No objections to the PSI were filed by the Government or by Robertson. Robertson's guideline range has been calculated to be 97– 121 months for the robberies, and a consecutive sentence of 85 years for the firearm convictions.

Title 18, Section 924(c)(1) imposes a mandatory term of imprisonment of five years for the first firearm conviction. Section 924(c)(1) further provides that a mandatory term of imprisonment of twenty years must be imposed for all subsequent firearm convictions. Finally, the statute provides:

> Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried.

18 U.S.C. § 924(c)(1).

Because Robertson was convicted of all counts, and because he chose not to cooperate with the Government, the Government did not file a Section 5K1 or 18 U.S.C.

§ 3553(3) motion which would allow the Court to sentence below the statutory minimum sentences that are applicable in this case.

The Government did note for the record at the sentencing hearing that even after trial, the Government offered to let Robertson provide assistance with regard to Jaimie Gonzalez, a co-defendant that was a fugitive at the time of trial, to provide him the benefit of a Section 5K1.1 or Section 3553(e) motion. Robertson, with the knowledge of the sentence he is facing, nonetheless has not agreed to provide such assistance. The Government further noted that at this time, Robertson no longer can take advantage of the Government's offer to cooperate.

At the sentencing hearing, Mr. Strauss did indicate that he believed the Court possesses discretion as to whether sentences for firearm convictions need to be consecutive, he nonetheless did not file a position paper on this issue or provide the Court any authority for such argument.

Given the clear statutory mandate to impose a consecutive 85 year sentence to the guideline range of 97–121 months, it would appear that this Court would have no choice but to sentence Robertson to a term of imprisonment exceeding 90 years. The interests of justice provide this Court another option, however.

When reviewing the roles each Defendant played in the conspiracy at issue, and their respective sentences, the interests of justice require that this Court vacate Robertson's convictions and order a new trial as the record *clearly* establishes that Robertson received ineffective assistance of counsel.

## ANALYSIS

■ This Court recognizes that usually, claims of ineffective assistance of counsel are addressed via habeas corpus petitions because such claims normally need to be developed with facts outside of the record. *United States v. Gallegos–Torres,* 841 F.2d 240, 242 (8th Cir.1988) However, where the "defendant's legal representation was so inadequate as obviously to deny him his sixth amendment right to counsel" a trial court's

failure to take notice sua sponte may be plain error. *United States v. Salazar,* 967 F.2d 595 (9th Cir.1992). To prove ineffective assistance of counsel, there must be a showing that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ Given the overwhelming evidence presented against Robertson at trial, including his "confession" and the testimony of his co-defendants, and the potential penalties involved, Mr. Strauss provided his client ineffective assistance of counsel by not advising his client to accept any of the plea negotiations offered by the Government.

While Mr. Strauss may be philosophically opposed to cooperation agreements, it is his absolute duty as a criminal defense attorney to put his client's interests before his own. Mr. Strauss is not facing 90 years in prison, his client is, and this Court is convinced beyond doubt that this is so because of the counsel he received prior, during and after trial from Mr. Strauss.

The Court is also troubled by the fact that only two motions were filed on behalf of Robertson by Mr. Strauss prior to trial, and that Mr. Strauss filed no objections or a position paper at sentencing, *when his client was facing in excess of 90 years in prison.* This lack of advocacy is compounded when considering Mr. Strauss' conduct during trial.

The Court is aware that many months have passed since the trial in this matter. However, it is the opinion of this Court that the issue of ineffective assistance of counsel was not established until the Government noted for the record, at sentencing, that it will no longer offer Defendant Robertson the chance to cooperate to receive the benefit of a downward departure motion. Prior to that time, Robertson still had the chance to receive a sentence commensurate with his co-defendants thus the prejudice factor of an ineffective assistance claim was not yet met. Prejudice now is established however, and the interest of justice require that Robertson's convictions be vacated, and the matter retried with effective assistance of counsel.

IT IS HEREBY ORDERED that the convictions in this matter against Defendant Phillip Adrian Robertson are VACATED and that he be given a NEW TRIAL. Mr. Jerry Strauss is hereby removed as counsel of record and that Ronald Meshbesher, Esq. be substituted in as counsel of record.